Ogonna Brown, Bar No. 7589
Ogonna.Brown@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Tel: 702.949.8200
Fax: 702.949.8398

*Attorneys for Secured Creditor The Swindle Family Trust dated October 20, 1999*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>DUKE PARK,<br><br>             Debtor. | Case No. 25-12285-ABL<br><br>Chapter 7<br><br>**OBJECTION TO MOTION TO ENFORCE DISCHARGE INJUNCTION AND FOR CONTEMPT SANCTIONS AGAINST THE SWINDLE FAMILY TRUST AND ITS AGENTS**<br><br>Hearing Date: September 15, 2025<br>Hearing Time: 9:30 a.m.<br><br>Hon. August Landis |

Creditor The Swindle Family Trust dated October 20, 1999 (the "Swindle Trust", or alternatively, the "Lender"), by and through its counsel, Ogonna M. Brown of the law firm of Womble Bond Dickinson (US) LLP, hereby files its Objection ("Objection") to Motion to Enforce Discharge Injunction and for Contempt Sanctions Against the Swindle Family Trust and Its Agents (ECF No. 44) and Motion to Enforce Discharge Injunction and for Contempt Sanctions Regarding 1392 Via Merano Street Property (ECF No. 45) ("Motion").

This Objection is supported by the Declaration of Zaydee Stemmons ("Stemmons Decl."), one of the attorneys for the Swindle Family Trust, filed separately and concurrently herewith pursuant to Rule 9014(c) of the Local Rule of Bankruptcy Practice of the United States District Court for the District of Nevada. This Objection is further made and based upon the Memorandum of Points Authorities set forth below.

. . .

. . .

4938-0628-6427.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.　STATEMENT OF FACTS

1.　The Swindle Trust is the holder of two promissory notes secured by deeds of trust, secured by the real property commonly known as 33 Stonemark Drive, Henderson, NV 89052, APN 190-08-414-017 and the real property commonly known as 1392 Via Merano Street, Henderson, NV 89052, APN 191-02-713-008 (together, the "Properties").

2.　The Stonemark Note is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Stonemark Deed of Trust") recorded July 12, 2023, against the property commonly known as 33 Stonemark Dr., Henderson, NV 89052, APN 190-08-414-017 (the "Stonemark Property") with the Clark County Recorder's office as Instrument No. 20230712-0000943.

3.　The Via Merano Note is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Merano Deed of Trust") recorded against the real property commonly known as 1392 Via Merano Street, Henderson, NV 89052 APN 191-02-713-008 (the "Merano Property") with the Clark County Recorder's office as Instrument No. 202306060001845.

4.　On January 2, 2025, the Swindle Trust recorded a Breach & Election to Sell as Instrument No. 20250102-0000423 for Merano Property and Instrument No. 20250102-0000435 for Stonemark Property.

5.　On April 2, 2025, the Swindle Trust recorded a Notice of Trustee Sale as Instrument No. 20250402-0000155 for Merano Property and Instrument No. 20250402-0000161 for Stonemark Property.

6.　On April 22, 2025, the Debtor filed his voluntary petition, commencing the above-captioned bankruptcy proceeding and causing the foreclosure sale to be postponed.

7.　On May 7, 2025, the Swindle Trust filed the Stipulated for Relief from Stay Re Real Property Located at 33 Stonemark Dr., Henderson, NV 89052 and 1392 Via Merano St., Henderson, NV 89052 and Waiver of the 14-Day Stay Under FRBP 4001(a)(3) (ECF No. 15), which was signed by Matthew Knepper, Esq. on behalf of the Debtor and the Chapter 7 Trustee Robert E. Atkinson ("Trustee").



4938-0628-6427, v. 1

8.  On May 8, 2025, this Court entered its Order Approving Stipulation for Relief from Stay Re Real Property Located at 33 Stonemark Dr., Henderson, NV 89052 and 1392 Via Merano St., Henderson, NV 89052 and Waiver of the 14-Day Stay Under FRBP 4001(a)(3) (the "Stay Termination Order") (ECF No. 16).

9.  In the Stay Termination Order, this Court ordered that the automatic stay pursuant to 11 U.S.C. § 362 was terminated as to the Properties, and that the Swindle Trust may proceed to enforce its state law rights and remedies against the Properties, including foreclosure (ECF No. 16).

10. On May 8, 2025, the Swindle Trust filed its Notice of Entry of the Order Granting the Stipulation for Stay Termination (ECF No. 17).

11. On June 24, 2025, the Swindle Trust foreclosed on the Properties and became the legal owner of the Property. *See* Stemmons Decl., ¶ 14.

12. On July 7, 2025, the Swindle Trust recorded its Trustee's Deed Upon Sale for the Via Merano Property as Instrument No. 202507070000169 and recorded its Trustee's Deed Upon Sale for the Stonemark Property as Instrument No. 202507070000168 . *See* Trustee's Deeds Upon Sale, **Exhibit "1"** to Stemmons Decl.

13. On July 17, 2025, the Trustee submitted his Chapter 7 Trustee's Report of No Distribution (ECF No. 39), noting that the Debtor had abandoned $2,300,000.00 worth of assets, which is the amount of real estate assets Debtor scheduled on his Amended Schedule A/B (ECF No. 37) which included the Properties.

14. On July 24, 2025, this Court entered an Order of Discharge, which noted that "a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated . . . **a creditor may have the right to foreclose a home mortgage** or repossess an automobile." See Order of Discharge, Dkt. No. 41 (emphasis added).

*Proceedings against Debtor regarding the Via Merano Property*

15. After serving a Notice to Quit on Debtor on July 14, 2025, the Swindle Trust filed its Complaint for Unlawful Detainer on July 30, 2025, initiating Case No. 25CH004165 in the Clark

4938-0628-6427, v. 1

County Justice Court, Township of Henderson.[1] *See* Complaint for Unlawful Detainer, **Exhibit "2"** to Stemmons Decl.

16. On the same day, the Swindle Trust filed its Ex Parte Application for Order to Show Cause Why a Temporary Writ of Restitution Should Not Issue, and Order Shortening Time to Answer Complaint. *See* Ex Parte Application, **Exhibit "3"** to Stemmons Decl.

17. On August 5, 2025, the Henderson Justice Court entered an Order to Show Cause Why a Temporary Writ of Restitution Should Not Issue, and Order Shortening Time to Answer Complaint, ordering Debtor and any other occupants to appear before the Justice Court on September 2, 2025. *See* Order to Show Cause and Order Shortening Time, **Exhibit "4"** to Stemmons Decl.

***Proceedings against Steve Park regarding the Stonemark Property***

18. After serving Steve Park and the other occupants squatting on the Stonemark Property with a Notice to Surrender on July 14, 2025, and Steve Park did not leave the property or exercise his right to file an Affidavit of Answer with the Henderson Justice Court (thereby waiving the right to answer), the Swindle Trust filed an Affidavit of Complaint with the Henderson Justice Court requesting the removal of the unauthorized occupants. *See* Complaint filed with the Henderson Justice Court on July 30, 2025, **Exhibit "5"** to Stemmons Decl.

19. The Justice Court granted the Removal Order for Steve Park on August 4, 2025. *See* Email re Granting of Removal Order, **Exhibit "6"** to Stemmons Decl.

---

[1] This Court may take judicial notice all materials appearing on the Henderson Justice Court docket. *See Mack v. Est. of Mack*, 125 Nev. 80, 206 P.3d 98 (2009); *U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar claims); *Bank of Am., N.A. v. CD-04, Inc.* (*In re Owner Mgmt. Serv., LLC Trustee Corps.*), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015), *aff'd sub nom. OMS, LLC v. Bank of America, N.A.*, 2015 WL 1271307 (C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records."). "A court may take judicial notice of facts 'not subject to reasonable dispute' because they are either '(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *In re Double Jump, Inc.,* No. 19-50130-GS, 2022 WL 4390830, at *2 (Bankr. D. Nev. Sept. 22, 2022); Fed. R. Evid. 201(b). Courts may also take judicial notice of other courts' docket entries. *In re Double Jump,* at *2.

20. On August 4, 2025, the Swindle Family Trust caused to be delivered the instructions for the lockout to the Henderson constable to evict Steve Park from the Stonemark Property. *See* Stemmons Decl., ¶ 21.

21. On August 7, 2025, the constable executed the lockout at the Stonemark Property where Steve Park was squatting, after posting the lockout notice pursuant to Nevada law. *See* Stemmons Decl., ¶ 22.

22. On August 7, 2025, Steve Park reached out to Attorney Stemmons via phone call, requesting the opportunity to reenter the property and retrieve certain items. *See* Stemmons Decl., ¶ 23.

23. Though not obligated to do so pursuant to NRS 40.414, Attorney Stemmons, with the Swindle Trust and lead counsel Ogonna Brown, immediately began coordinating Steve Park's retrieval of his items. *See* Text Messages between Steve Park and Attorney Stemmons, **Exhibit "7"** to Stemmons Decl.

24. After Steve Park notified Attorney Stemmons that he had not received instructions about retrieving his items, Attorney Stemmons confirmed that the coordination of the pickup of the abandoned personal property was still in process. *See* Stemmons Decl., ¶ 25.

25. On August 11, 2025, Debtor filed a Motion to Reopen in the removal action against Steve Park, even though the Debtor was a nonparty to the Steve Park eviction action. *See* Motion to Reopen, **Exhibit "8"** to Stemmons Decl.

26. Though the Motion to Reopen was not served on the Swindle Trust, on August 18, 2025, Swindle Trust filed an Opposition to the Motion to Reopen. *See* Opposition to the Motion to Reopen, **Exhibit "9"** to Stemmons Decl.

27. On August 18, 2028, the Henderson Justice Court issued an Order Denying the Motion to Reopen Case. *See* Order Denying the Motion to Reopen Case, **Exhibit "10"** to Stemmons Decl.

28. The only communications from the Swindle Trust's counsel and the Swindle Trust to Debtor and Steve Park were emails with Justice Court filings to ensure service and, communications to coordinate the retrieval of Steve Park's personal property, noting that Debtor

- 5 -

was only served because he filed the Motion to Reopen Steve Park's eviction case, even though Debtor was not a party to the eviction action. Counsel for the Swindle Trust also texted Steve Park to notify him of plans to file motion for extension per Henderson Justice Court Rules. *See* Service of Process Emails and the Text Messages, **Exhibit "11"** to Stemmons Decl.

## II.     LEGAL ARGUMENT

### A.     Standard for Injunction Order Under Section 523

11 U.S.C. § 524 states that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived" and "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case." *See* 11 U.S.C 524(a)(2) – (3). According to 11 U.S.C. § 105(a), a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

#### 1.     Debtor Stipulated to Foreclosure and State Law Remedies, Including Eviction

As a preliminary matter, Debtor expressly stipulated to terminate the automatic stay to allow the lender, the Swift Family Trust, to foreclose on the Properties as follows:

> [T]he automatic stay pursuant to 11 U.S.C. § 362 shall be terminated as to the Properties and that Lender may proceed **to enforce its state law rights and remedies against the Properties**, including, but not limited to, foreclosure of the Properties and seeking state court relief to expunge the lis pendens placed on the Properties.

*See* Stipulation to Terminate Stay, p. 1, ¶ 2 (emphasis added) (ECF No. 15). In the Stay Termination Order, this Court ordered that the automatic stay pursuant to 11 U.S.C. § 362 was terminated as to the Property, and that the Swindle Trust may proceed to enforce its state law rights and remedies against the Property, including foreclosure, and if necessary to evict the Debtor and his son Steve Park, who lived at both Properties rent free (ECF No. 16).

Lender's state law rights included the foreclosure sale of the Properties and if no buyers appeared at the foreclosure sale, to sell the Properties, which required that both Properties be

vacated by Debtor and his son, Steve Park, respectively. The sale of the Properties was imperative because Debtor had not made a single payment on the Loan on either of the Properties since inception, and the Lender has been paying carrying costs on the Properties for years, including real property taxes and insurance.

### 2.   Debtor Misapprehends the Scope of the Injunction Order

Debtor misstates this as "a discharge operates as an injunction against any act to collect, recover, or offset any discharged debt or to obtain possession of property of the debtor." *See* Motion, p. 1 (ECF No. 45). To the contrary, a discharge order does not preclude secured creditors from foreclosing their liens after the discharge is entered, as the discharge order "bars only efforts to collect debts as a personal liability of the debtor." *In re Marino*, 577 B.R. 772, 783 (B.A.P. 9th Cir. 2017), aff'd in part, appeal dismissed in part, 949 F.3d 483 (9th Cir. 2020) (internal quotations omitted); *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) (noting that a creditor may exercise in rem rights against property); 4 Collier on Bankruptcy ¶ 524.02(16th ed. 2018). Furthermore, "a lienholder may communicate with a discharged debtor only to the extent necessary to preserve or enforce its lien rights" and "may not attempt to induce the debtor to pay the debt." *In re Marino,* at 784. Furthermore, "even if a creditor threatens only to enforce its surviving lien, that threat will violate the discharge injunction if the evidence shows that the threat is really an effort to coerce payment of the underlying discharged debt." *United States v. Holmes (In re Holmes)*, BAP No. CC-94-2001-HMV, 76 A.F.T.R.2d 95-7925, 1995 WL 800102 (9th Cir. BAP 1995).[2]

Other bankruptcy courts have held that post-foreclosure eviction proceedings do not violate the discharge order. *In re Ottoman*, 621 B.R. 768, 797 (Bankr. E.D. Mich. 2020) (holding that the creditor's eviction action based on an equitable mortgage did not violate the discharge order); *In re*

---

[2] Furthermore, 11 U.S.C. 524(a)(2) does not act as an injunction against an act by a creditor that is the holder of a secured claim if "such creditor retains a security interest in real property that is the principal residence of the debtor." 11 U.S.C. 524(j)(3). Debtor describes the Property as his "homestead" in his Schedule A/B and Supplemental Statement and Demand for Explanation. *See* Schedule A/B, p. 1 (ECF No. 37); Supplemental Statement and Demand for Explanation, p. 2 (ECF No. 54).

4938-0628-6427, v. 1

*Muhammad*, No. 14-41311 CN, 2015 WL 13742904, at *2 (Bankr. N.D. Cal. Mar. 9, 2015) (noting that "an unlawful detainer judgment for possession is not an attempt to collect a debt").

The Swindle Trust's rights to foreclose upon and repossess under bankruptcy law are affirmed by the Order of Discharged issued on July 22, 2025. *See* Order of Discharge, p. 1 (ECF No. 41). This Court specifically ruled that, "a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile." *Id.* In the avoidance of doubt, the Lender has not sought any money damages against the Debtor, nor has the Debtor commenced a deficiency action or any action for money against the Debtor. To the extend the Lender has a pre-petition claim against the Debtor, the Lender may file a proof of claim against the Debtor in his bankruptcy case in the event Debtor's case is deemed an asset case.

The Swindle Trust's actions have all been *in rem* actions that do not violate the discharge order, as they are purely to enforce the Swindle Trust's property rights. [3] The Swindle Trust properly foreclosed upon the Property and obtained ownership through a Trustee's Deed upon Sale. *See* Trustee's Deed upon Sale, **Exhibit "1"** and **"2"** to Stemmons Decl. Then, after Debtor, and his son, refused to vacate the Properties that the Swindle Trust is now the lawful owner of, the Swindle Trust initiated the unlawful detainer and removal actions. *See* Complaint for Unlawful Detainer, **Exhibit "3"** to Stemmons Decl.; *see also* Complaint for Removal of Unlawful/Unauthorized Occupant, **Exhibit "4"** to Stemmons Decl. Debtor has provided no evidence to show that the Swindle Trust's actions or communications are intended to induce Debtor to pay the debt or are in violation of this Court's Orders whatsoever. In fact, the Swindle Trust's only communications with Debtor and Steve Park have been to send emails with filings as part of service of process and communications to assist Steve Park in retrieving his abandoned person belongings,

---

[3] The Nevada Supreme Court has held that unlawful detainer actions are in rem or quasi in rem, defining quasi in rem as "a halfway house between in rem and in personam jurisdiction, because the "action is not really against the property" but rather is used "to determine rights in certain property." *Chapman v. Deutsche Bank Nat'l Tr. Co.*, 129 Nev. 314, 318, 320, 302 P.3d 1103, 1106, 1108 (2013). Unlawful detainer actions are actions that affect interests in a thing—real property. *Id.*, at 321, 302 P.3d at 1108



WOMBLE BOND DICKINSON

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

4938-0628-6427, v. 1

which have been retrieved. *See* Stemmons Decl., ¶ 28. Thus, there is nothing for the Court to enforce or sanction, as the discharge order was not violated.[4]

### III.  CONCLUSION

Swindle Trust respectfully requests that this Court enter an (a) order denying Debtor's Motion to Enforce Discharge Injunction and for Contempt Sanctions Against the Swindle Family Trust and Its Agents; and (b) granting such other relief as is just under the circumstances.

DATED this 27th day of August, 2025.

WOMBLE BOND DICKINSON (US) LLP

By: */s/ Ogonna Brown*
Ogonna Brown, Bar No. 7589
Ogonna.Brown@wbd-us.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169
Tel.: 702.949.8200
*Attorneys for Secured Creditor The Swindle Family Trust dated October 20, 1999*



---

[4] Finally, for a sanctionable violation of the discharge injunction to occur, the debtor must show that the creditor: "(1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." *In re Nash*, 464 B.R. 874, 880 (B.A.P. 9th Cir. 2012). The Ninth Circuit has held that the first prong requires that the debtor show the bankruptcy court that the creditor "knew that the discharge injunction was applicable to its claim." *Id*. Pursuant to the clear language of this Court's Discharge Order, The Swindle Trust had every right to proceed with foreclosure and has every right to enoforce its property rights in the Properties.

- 9 -

4938-0628-6427, v. 1

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Womble Bond Dickinson (US) LLP, and that on the 27th day of August, 2025, I caused to be served a true and correct copy of **OBJECTION TO ENFORCE DISCHARGE INJUNCTION AND FOR CONTEMPT SANCTIONS AGAINST THE SWINDLE FAMILY TRUST AND ITS AGENTS** in the following manner:

☒ (ELECTRONIC SERVICE)  Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

☐ (UNITED STATES MAIL)  By depositing a copy of the above-referenced document for mailing in the United States Mail on May 8, 2025, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the Court's attached creditor's matrix with additions and edits, at their last known mailing addresses, on the date above written.

☐ (OVERNIGHT COURIER)  By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

☐ (FACSIMILE)  That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

/s/ Renee L. Creswell
An employee of Womble Bond Dickinson (US) LLP

4938-0628-6427, v. 1