Duke Park, Debtor – Pro Se
1392 Via Merano St.
Henderson, NV 89052
408-318-3700
dukepark@me.com

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re:

DUKE PARK,

Debtor.

Case No.: 25-12285-abl

Chapter 7

**DEBTOR'S REPLY TO OBJECTION FILED BY THE SWINDLE FAMILY TRUST**

**(DOCS. 66, 67)**

Debtor Duke Park, appearing pro se, respectfully submits this Reply to the Objection filed by

The Swindle Family Trust (Docs. 66, 67), and states as follows:

**I. Introduction**

This case arises from the bankruptcy proceedings of Debtor Duke Park and concerns the

ownership and possessory rights relating to two properties (33 Stonemark Dr., Henderson, NV

and 1392 Via Merano St., Henderson, NV) and three related entities (ALS Property Holdings,

LLC, EBH Management Co., LLC, and Sea Fox Management, LLC). The Swindle Family Trust

("Swindle") acquired a Trustee's Deed by means of a self-bid at the foreclosure sale conducted

on June 24, 2025, and, relying on that deed, initiated eviction proceedings in the Henderson

Justice Court. In its Opposition (Docs. 66, 67), Swindle reiterates this position, asserting that

eviction constitutes the lawful exercise of ownership rights arising from its alleged purchase.

The Debtor, however, listed both properties and the three LLCs on his bankruptcy schedules, and the Trustee reviewed them as part of the estate. Furthermore, the Ahn Defendants filed an adversary proceeding under 11 U.S.C. § 523 seeking nondischargeability, thereby joining the dispute as plaintiffs. In addition, the Nevada state court, by orders dated June 18 and July 14, 2025 (**Exhibit 1**), denied Swindle's Motion to Expunge the Lis Pendens, thereby confirming the continuing validity and effect of the Lis Pendens.

Nevertheless, Swindle repeatedly engaged in in personam conduct by serving pleadings directly upon the Debtor personally, conduct that constitutes a direct violation of the discharge injunction under 11 U.S.C. § 524. Notably, an email sent by Swindle's counsel, Z. Stemmons, on August 8, 2025 (**Exhibit 2**) constitutes clear evidence of direct service upon the Debtor, in contravention of federal law. Likewise, the Certificate of Service (Doc. 63, **Exhibit 3**) evidencing that the Summons/OSC was personally served on the Debtor at his residence further corroborates such violations.

Accordingly, this Reply sets forth the Debtor's counterarguments to Swindle's Opposition (Docs. 66, 67) and addresses, in sequence, the following seven issues: (I) Introduction, (II) the Bankruptcy Court's exclusive jurisdiction and the necessity of maintaining the status quo, (III) the effect of the Lis Pendens and the resulting clouded title, (IV) the distinction between Stay Relief and the Discharge Injunction, (V) Swindle's status—Creditor or Owner, (VI) the nature of the eviction proceedings: In Rem or In Personam, and (VII) Conclusion and requested relief.

Through this analysis, the Debtor presents the conclusions that this Court should adopt and requests the appropriate relief consistent with those conclusions.

## II. Exclusive Jurisdiction and the Necessity of Preserving the Status Quo

The ownership disputes concerning the two properties and the three LLCs (ALS, EBH, and Sea Fox) fall squarely within the exclusive jurisdiction of the Bankruptcy Court under federal law. In order to safeguard the effectiveness of that jurisdiction, the assets must be preserved in their **current state (status quo)** until the conclusion of the proceedings.

1) The statutory basis is clear. **28 U.S.C. §1334(b)** provides that all civil proceedings arising under or related to a bankruptcy case are within the jurisdiction of the federal courts. Further, **28 U.S.C. §157(b)(2)(A)[1] and (K)** designate the administration of estate property and disputes concerning interests in property as core proceedings. Once the Debtor listed the two properties and the LLCs in the bankruptcy schedules, they became part of the estate pursuant to **11 U.S.C. §541(a)**, and any disputes regarding such property are subject to this Court's jurisdiction.

2) The participation of the Ahn Defendants further reinforces this jurisdiction. They have filed an adversary proceeding (Adversary Proceeding No. 25-01162) under **11 U.S.C. §523(a)(2), (a)(4), and (a)(6)**, and they are currently active plaintiffs in this matter. In addition, the Lis Pendens filed under the name of the Ahn-affiliated LLCs remains in effect, underscoring that ownership remains unsettled until the dispute is resolved.

3) Under these circumstances, **preservation of the status quo** is indispensable. The Debtor received a discharge order on July 22, 2025 (Doc. 41), followed by service of the BNC Notice on July 24, 2025 (Doc. 42). **11 U.S.C. §524(a)(2)** expressly

---

[1] *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995) ("Bankruptcy Court's jurisdiction is paramount over matters concerning the estate").

prohibits any act to collect, recover, or otherwise interfere with the Debtor's

property or possession based on discharged debts. Accordingly, coercive conduct

such as eviction transcends mere possessory disputes and constitutes a violation

of federal law.

In conclusion, the two properties and the three LLCs remain under the exclusive jurisdiction of

the Bankruptcy Court and must be preserved in their **current state (status quo)** until the

litigation is concluded. This requirement is simultaneously imposed by the Lis Pendens, the

active participation of the Ahn Defendants as plaintiffs, and the **§524(a) Discharge Injunction**.

This Court should therefore declare that the eviction proceedings in the state court constitute a

violation of federal law.

### III. Lis Pendens and Clouded Title

The two properties at issue in this case were foreclosed upon while Lis Pendens remained

in effect. As a result, the Trustee's Deed acquired by Swindle constitutes nothing more than a

**clouded title** and does not establish complete ownership.

The Nevada state court (Judge Joe Hardy), through the hearing on June 18, 2025, and its

order dated July 14, 2025 (**Exhibit 1**), denied Swindle's Motion to Expunge the Lis Pendens,

thereby expressly confirming its continued validity and effect. Under **NRS 14.015**, a Lis Pendens

operates as a device that prohibits changes in title "until final resolution of the litigation," serving

as public notice that ownership rights in the properties remain unsettled.

Accordingly, the foreclosure deed alone cannot confer full ownership, particularly

because Swindle acquired the deed by means of a self-bid and therefore cannot qualify as a **bona**

**fide purchaser** under Nevada law.[2] Given that the Debtor had already listed the properties in his

---

[2] *In re Cherry*, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000) (lis pendens creates a clouded title, preventing foreclosure deed from conveying full ownership).

bankruptcy schedules and that the Ahn Defendants have intervened as plaintiffs in the adversary proceeding, ownership cannot be conclusively determined until adjudication by the Bankruptcy Court.

Nevertheless, Swindle, disregarding entirely the jurisdiction and authority of the Bankruptcy Court, proceeded in the Henderson Justice Court to pursue eviction solely on the basis of the foreclosure deed. Such conduct ignores not only the effect of the Lis Pendens but also the exclusive jurisdiction of the Bankruptcy Court, amounting to an unlawful attempt to alter possession while ownership remains unsettled.

**In conclusion,** the two properties remain in a state of clouded title so long as the Lis Pendens is in effect, and Swindle's deed cannot establish full ownership. While in ordinary circumstances a foreclosure deed might provide a basis for asserting ownership or pursuing eviction, the properties here were listed on the Debtor's bankruptcy schedules, thereby becoming part of the federal bankruptcy estate, and Swindle, as a BNC-noticed creditor, is subject to federal bankruptcy oversight. Any action thus requires approval of the Bankruptcy Court. By abandoning this requirement and pursuing eviction in state court, Swindle has not only disregarded the Lis Pendens but also violated federal jurisdiction and the discharge injunction under 11 U.S.C. § 524.

## IV. Distinction Between Stay Relief and the Discharge Injunction

Within the bankruptcy framework, the **Automatic Stay (§362)** and the **Discharge Injunction (§524)** both serve to restrict a creditor's enforcement rights, but they differ in their timing, legal character, and scope of effect. Accordingly, the fact that Swindle previously obtained stay relief does not provide any legal basis to pursue eviction against the Debtor after the entry of discharge.

1) The **Automatic Stay (§362)** takes effect immediately upon the filing of a bankruptcy petition and temporarily halts all collection activities, lawsuits, executions, and evictions. Its purpose is to prevent disorderly competition among creditors and to provide the Bankruptcy Court sufficient time to establish an orderly framework for administration and distribution. Creditors may request relief from the stay if necessary, and in this case, Swindle obtained a Stay Relief Order on May 8, 2025 (Doc. 16), by agreement with the Debtor and the Trustee. However, such relief is merely a procedural release permitting foreclosure or other enforcement of lien rights; it does not confer broader authority beyond that.

2) The **Discharge Injunction (§524(a))** arises only after the Debtor has been granted a discharge. **§524(a)(2)** expressly prohibits any act to collect, recover, or interfere with the Debtor's property or possession based on discharged debts. This injunction serves as an absolute protective barrier ensuring the Debtor's **fresh start**. Its legal character and effect are entirely separate and independent from stay relief.

3) The relationship between the two is clear: even if stay relief is granted, it is nothing more than a lifting of the §362 automatic stay. It does not retroactively override or nullify the protections that arise under §524 upon discharge.[3] In other words, while a creditor may utilize stay relief to complete foreclosure proceedings, once the Debtor receives a discharge, the creditor cannot justify post-discharge acts such as dispossessing the Debtor or pursuing eviction, which are in personam in nature.

4) In this case, Swindle proceeded in the Henderson Justice Court to pursue eviction and asserted that "because we already obtained stay relief, the eviction is lawful." However,

---

[3] In re Paul, 534 F.3d 1303, 1307 (10th Cir. 2008) (discharge injunction operates independently of the stay and remains fully enforceable).

the Debtor received his discharge order on July 22, 2025 (Doc. 41), followed by service of the BNC Notice on July 24, 2025 (Doc. 42). From that point forward, all actions by Swindle were subject to the prohibitions of §524. Thus, the state court eviction was not merely a matter of asserting ownership but constituted a violation of the Discharge Injunction.

**In conclusion, Stay Relief and the Discharge Injunction are entirely distinct in timing, effect, and purpose. Stay Relief cannot be invoked to disregard the Discharge Injunction. Swindle's reliance on stay relief to justify eviction is legally baseless and, instead, aggravates its exposure to contempt liability for violating §524.**

## V. Swindle's Status: Creditor vs. Owner

The status of the Swindle Family Trust ("Swindle") is firmly established as that of a **Creditor** under the record of this case and the governing provisions of bankruptcy law. Nevertheless, in its Opposition (Docs. 66, 67), Swindle asserts that it is the lawful **Owner** by virtue of its foreclosure deed, and it seeks to justify state court eviction proceedings on that basis. Such a position, however, is inherently self-contradictory and cannot be recognized within the bankruptcy framework.

1) **Swindle's status in the Bankruptcy Court** has already been determined. On May 7, 2025, Swindle entered into a Stay Relief Stipulation with the Debtor and the Trustee (Doc. 15), which this Court approved the following day (Doc. 16). In that process, Swindle was expressly identified as a **secured creditor**, permitted to act only in its capacity as a lienholder against estate property. Furthermore, the **BNC Certificate of Notice (Doc. 42)**, served on July 24, 2025, listed Swindle as a Creditor. This confirms

that the Court itself recognized and proceeded on the basis that Swindle's role was that of a Creditor.

2)  The **limitations of the foreclosure deed** are decisive. On June 24, 2025, Swindle acquired a Trustee's Deed through a self-bid at the foreclosure sale, and it now claims ownership status on that basis. At that time, however, both properties remained under a Lis Pendens and were subject to a **clouded title**. The Nevada state court (Judge Joe Hardy), through orders dated June 18 and July 14, 2025 (**Exhibit 1**), denied Swindle's motions to expunge the Lis Pendens, thereby affirming its continued effect. Under Nevada law, a deed acquired while a Lis Pendens is in effect does not enjoy the protections afforded to bona fide purchasers. Thus, Swindle's deed did not and could not establish clear title, nor could it retroactively alter Swindle's established status as a Creditor.

3)  **The doctrine of Judicial Estoppel applies.** Federal law does not permit a party to assert contradictory positions in different courts or proceedings for strategic advantage. Swindle obtained the benefit of stay relief in the Bankruptcy Court on the basis of its status as a Creditor, and was also compulsorily served as a Creditor through the BNC Certificate of Notice (Doc. 42), thereby being subjected to this Court's jurisdiction and restrictions. **Yet in the state court and in its Opposition, Swindle proceeded on the basis of being an Owner and pressed forward with eviction.** Such contradictory conduct squarely violates the principle of Judicial Estoppel and, if condoned, would undermine the integrity of judicial proceedings.

4)  **The binding effect of the Discharge Injunction** is unavoidable. The Debtor received a discharge on July 22, 2025 (Doc. 41), after which all creditor conduct became restricted

by §524(a). Because the Court's record already established Swindle as a Creditor, all of

its subsequent acts are subject to §524(a). Even if Swindle purports to rely on its

foreclosure deed to claim ownership, its attempt to dispossess the Debtor through

eviction constitutes creditor conduct in violation of §524.

In conclusion, Swindle's true status is that of a Creditor, as conclusively established by the

Court's record and the BNC Certificate of Notice. The foreclosure deed was acquired under a

clouded title encumbered by a Lis Pendens and cannot create new ownership rights.

Accordingly, Swindle's assertion of ownership lacks any legal foundation and, instead,

magnifies its liability as a Creditor for violating the §524(a) Discharge Injunction.

## VI. The Nature of Eviction: In Rem vs. In Personam, and the Violation of Discharge Protections

Swindle may attempt to characterize the eviction proceedings it pursued in the Henderson

Justice Court as merely an exercise of rights against the property itself (in rem). However, the

record and the evidence (**Exhibit 2, Exhibit 3, Doc. 63**) demonstrate that Swindle's eviction

efforts went well beyond in rem actions and amounted to direct pressure on the Debtor

personally—**in personam / coercive conduct**—in violation of the **11 U.S.C. §524(a) Discharge

Injunction**.[4]

1) **Direct service and email communications.** Swindle's counsel, Z. Stemmons,

transmitted eviction pleadings from the Henderson Justice Court directly to the Debtor's

personal email address and, at the same time, sent a courtesy copy to Debtor's withdrawn

counsel (**Exhibit 2**). In addition, the Summons and Order to Show Cause were personally

served upon the Debtor at his residence (**Exhibit 3, Doc. 63**). These actions cannot be

---

[4] n re Pratt, 462 F.3d 14, 19 (1st Cir. 2006) (coercive acts against the debtor after discharge violate §524).

characterized as mere in rem notice to the property but rather as direct pressure targeted at the Debtor himself.

2) **The effect of eviction.** An eviction is not merely an adjustment of title or possession; it is a coercive act that deprives the Debtor of his home and directly interferes with his right to live in the property. By its very nature, eviction transcends in rem administration of property interests and constitutes an in personam act against the Debtor.

3) **Conflict with the Discharge Injunction.** The Debtor received his discharge order on July 22, 2025 (Doc. 41), and the BNC Notice (Doc. 42) was served on all creditors on July 24, 2025. **§524(a)(2)** explicitly prohibits any act to collect, recover, or interfere with the Debtor's property or possession on account of discharged debts. Swindle's eviction suit went beyond an ownership dispute and inflicted direct harm on the Debtor personally. It cannot be disguised as a mere "in rem" proceeding.

4) **Legal assessment.** The Court must recognize this as a clear violation of §524 and impose sanctions accordingly.[5] Federal courts strictly prohibit creditors from undertaking coercive conduct aimed directly at a debtor after discharge. Even if Swindle claims ownership based on its foreclosure deed, the acts of direct service, email transmission, and pursuit of eviction amount to coercive conduct directed against the Debtor personally and must be evaluated as such.

## Supplemental Analysis: Violation of Discharge Protections and Undermining of Bankruptcy Court Authority

The central principle of the bankruptcy system is to guarantee the Debtor a **fresh start** through discharge. To achieve this, **11 U.S.C. §524(a)** expressly provides that no legal action or

---

[5] *In re Nassoko*, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009) (state court eviction attempt held to violate §524; Bankruptcy Court ordered restoration of possession and sanctions).

coercive act may be taken against the Debtor on account of discharged debts, establishing the Discharge Injunction as an absolute protection. This is not a mere recommendation but a statutory mandate under federal law.

1) **The hierarchy of jurisdiction. 28 U.S.C. §§1334 and 157** vest exclusive jurisdiction over disputes concerning estate property and discharge in the Bankruptcy Court. When a creditor proceeds with coercive measures such as eviction in a state court without the Bankruptcy Court's approval, it is not merely a procedural irregularity but a **jurisdictional usurpation**—a direct affront to the supremacy of federal bankruptcy law.

2) **Protection of the discharged debtor.** The Debtor received his discharge on July 22, 2025 (Doc. 41), and the **BNC Certificate of Notice (Doc. 42)** was served on all creditors on July 24, 2025. From that moment, the Debtor was fully protected under discharge. **§524(a)(2)** prohibits any lawsuit, order, or act that disturbs or deprives the Debtor of his property or possession on account of discharged obligations. Swindle's attempt to pursue eviction in state court was therefore a direct violation of the Debtor's rights and a frontal assault on the protections enshrined in federal bankruptcy law.

3) **Continuity of protection.** Upon the filing of bankruptcy, the Debtor was protected by the **§362 Automatic Stay**, which, upon entry of discharge, transitions into the **§524 Discharge Injunction**. This protection is continuous and absolute, designed to secure the Debtor's housing and livelihood. Despite being served as a creditor through the BNC process, Swindle disregarded this protection and pressed forward with state court eviction proceedings, thereby undermining the very philosophy of bankruptcy law—**the fresh start**.

4) **Systemic implications.** If creditors were permitted to bypass the exclusive jurisdiction of the Bankruptcy Court and pursue enforcement actions in lower courts, the discharge protections afforded to all debtors would be rendered meaningless. This is not a matter of individual rights alone but a fundamental threat to the authority of the federal bankruptcy system itself. The Bankruptcy Court must therefore treat violations of §524 not as minor procedural errors but as serious intrusions upon its jurisdiction and upon the supremacy of federal law.

**In conclusion, Swindle's eviction efforts were not mere in rem proceedings but constituted in personam coercive conduct aimed directly at the Debtor, in clear violation of §524. Moreover, by attempting to proceed outside the Bankruptcy Court, Swindle usurped federal jurisdiction and undermined the authority of the Bankruptcy Court. This Court must impose appropriate sanctions to protect the Debtor's rights and preserve the integrity and supremacy of the federal bankruptcy system.**

## VII. Conclusion and Requested Relief

The core issue in this matter is that Swindle relied solely on a foreclosure deed to assert ownership and possession and proceeded with eviction in state court. Such conduct disregarded the exclusive jurisdiction of the Bankruptcy Court and directly violated the protections afforded by federal bankruptcy law through the discharge.

As established:

- The two properties and related LLCs were listed in the Debtor's bankruptcy schedules and became part of the estate;

- The Nevada state court expressly confirmed the continuing effect of the Lis Pendens, rendering title unsettled; and

- Swindle's status has been conclusively established as that of a Creditor by the Bankruptcy Court's record and the BNC Certificate of Notice.

Nevertheless, Swindle personally served pleadings on the Debtor and pressed forward with eviction proceedings in state court. Such actions were not mere in rem proceedings but constituted in personam coercive conduct, in direct violation of the **11 U.S.C. §524(a) Discharge Injunction**.

Accordingly, the Debtor respectfully requests that this Court grant the following relief:

1. **Declare that Swindle's conduct violated the §524(a) Discharge Injunction.**

2. **Confirm that the eviction proceedings in the Henderson Justice Court are null and void.**

3. **Order restoration of the Debtor's possession and mandate preservation of the current status quo.**

4. **Declare that disputes concerning the two properties and related LLCs fall within the exclusive jurisdiction of the Bankruptcy Court, and not as an extension of state civil proceedings.**

5. **Confirm that Swindle's status as a Creditor has been established by this Court's record and the BNC Certificate of Notice (Doc. 42).**

6. **Impose civil contempt sanctions on Swindle and its agents for violations of §524.**

7. **Order compensation for the Debtor's temporary relocation and housing costs incurred as a result of Swindle's unlawful eviction efforts.**

8. **Declare that any further attempts by Swindle to circumvent this Court's jurisdiction by proceeding in state court or elsewhere shall result in the imposition of strong sanctions.**

**In conclusion,** this Court should impose strict sanctions against Swindle's repeated and willful misconduct, thereby protecting the Debtor's rights, upholding the authority of the federal bankruptcy system, and reinforcing the absolute force of the §524 Discharge Injunction.[6]

**Dated:** August 28, 2025

Signature: _____

Duke Park, Debtor – Pro Se

CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2025, a true and correct copy of the foregoing

Debtor's Reply to Objection Filed by The Swindle Family Trust (Docs. 66, 67)

was served via the Court's CM/ECF system on all parties registered to receive notice,

including counsel for The Swindle Family Trust, and the Office of the United States Trustee.

Signature: _____

Duke Park, Debtor – Pro Se

**Exhibits**

**Exhibit 1 – Certified State Court Order (denying Motion to Expunge Lis Pendens, confirming Lis Pendens remains in effect).**

**Exhibit 2 – Email from Z. Stemmons to Debtor (direct service of eviction pleadings).**

**Exhibit 3 – Certificate of Service (Doc. 63) evidencing direct service of Summons/OSC on Debtor's residence.**

---

[6] *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801 (2019) (civil contempt sanctions appropriate where there is no fair ground of doubt that a creditor's conduct is barred by the discharge order).

I declare under penalty of perjury under the laws of the United States that the attached documents are true and correct.

DATED: August 28, 2025

Respectfully submitted,

_____

Duke Park, Debtor – Pro Se

Exhibit 1 –

**Certified State Court Order (denying Motion to Expunge Lis Pendens, confirming Lis Pendens remains in effect).**

Electronically Filed
7/14/2025 4:36 PM
Steven D. Grierson
CLERK OF THE COURT

1  **NEOJ**
   KARA B. HENDRICKS
2  Nevada Bar No. 07743
   AKKE LEVIN
3  Nevada Bar No. 09102
4  **GREENBERG TRAURIG, LLP**
   10845 Griffith Peak Drive, Suite 600
5  Las Vegas, Nevada  89135
   Telephone:     (702) 792-3773
6  Facsimile:      (702) 792-9002
   Email:          hendricksk@gtlaw.com
7                  akke.levin@gtlaw.com
8  *Counsel for Defendants*

9                **IN THE EIGHTH JUDICIAL DISTRICT**

10                  **CLARK COUNTY, NEVADA**

11 DUKE PARK, an individual,                        Case No.  A-24-889923-B
                                                    Department No.  15
12                           Plaintiff,

13          v.
                                                    **NOTICE OF ENTRY OF ORDER**
14 LEE SOO AHN, an individual; BOK HYUN             [DENYING THE SWINDLE TRUST'S MOTION TO
   EUM, an individual; CHELSEA EOM, an             EXPUNGE LIS PENDENS]
15 individual; HONG JUN EOM, an individual;
   SOYEON EUM aka SO YON EUM, an
16 individual. JOHN DOES 1 through 5 and ROES I
   though X, inclusive,
17
18                           Defendants.

19          and

20 EBH MANAGEMENT CO., LLC; SEA FOX
   MANAGEMENT, LLC; and ALS PROPERTY
21 HOLDINGS, LLC,

22                  Nominal Parties.
   ─────────────────────────────────────
23 LEE SOO AHN, an individual; BOK HYUN
   EUM, an individual; CHELSEA EOM an
24 individual,

25                  Counter-Claimants,

26          v.

27 DUKE PARK, and individual,

28 ─────────────────────────────────────

                          Page 1 of 3

ACTIVE 712916511v1

Electronically Filed
07/14/2025 3:28 PM

[signature]

CLERK OF THE COURT

**ODM**
KARA HENDRICKS, ESQ.
Nevada Bar No. 07743
AKKE LEVIN, ESQ.
Nevada Bar No.  09102
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada  89135
Telephone:      (702) 792-3773
Facsimile:      (702) 792-9002
Email:          hendricksk@gtlaw.com
                akke.levin@gtlaw.com

*Counsel for Defendants/Counterclaimants/*
*Third-Party Plaintiffs, LEE SOO AHN;*
*BOK HYUN EUM; and CHELSEA EOM*

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| DUKE PARK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LEE SOO AHN, an individual; BOK HYUN EUM, an individual; CHELSEA EOM, an individual; HONG JUN EOM, an individual; SOYEON EUM aka SO YON EUM, an individual., JOHN DOES 1 through 5 and ROES I though X, inclusive,<br><br>Defendants.<br><br>and<br><br>EBH MANAGEMENT CO., LLC; SEA FOX MANAGEMENT, LLC; and ALS PROPERTY HOLDINGS, LLC,<br><br>Nominal Parties. | CASE NO. A-24-889923-C<br>DEPARTMENT XV<br><br><br>**ORDER DENYING THE SWINDLE TRUST'S MOTION TO EXPUNGE LIS PENDENS** |
| LEE SOO AHN, an individual; BOK HYUN EUM, an individual; CHELSEA EOM an individual,<br><br>Counter-Claimants/<br>Third-Party Plaintiffs,<br><br>v. | |

ACTIVE 712877234v1

1  DUKE PARK, and individual,

2                    Counter-Defendant,

3       and

4  ALS PROPERTY HOLDINGS, LLC a Nevada
   limited liability company, EBH

5  MANAGEMENT CO., LLC a Nevada limited
   liability company, and SEA FOX

6  MANAGEMENT, LLC a Nevada limited
   liability company.

7                    Nominal Parties.

8       and

9  VEGASZONE CONSTRUCTION INC., a

10  Nevada Domestic Corporation, and KATHY YI,
   an individual,

11                  Third-Party Defendants.

12

13       This matter came on for hearing before the Honorable Joe Hardy on June 18, 2025, at

14  9:00 a.m. on the Emergency Motion to Expunge Lis Pendens on Order Shortening Time ("Motion to

15  Expunge") filed by Intervenor the Swindle Family Trust dated October 20, 1999's (the "Swindle

16  Trust"). Ogonna Brown, Esq. appeared on behalf of the Swindle Trust. Akke Levin appeared on

17  behalf of Defendants/Counterclaimants Lee Soo Ahn, Bok Hyun Eum, and Chelsea Eom ("Ahn

18  Defendants") and ALS Property Holdings, LLC. The Court, having considered the papers filed in

19  support and in opposition to the Motion to Expunge, the declarations and exhibits attached thereto,

20  and having heard argument from counsel, finds as follows.

21  **I.    FACTUAL FINDINGS**

22       1.    As of April 2023, ALS Property Holdings, LLC ("ALS") owned six real properties in

23  Clark County, including (as relevant here), 782 Glistening Light Court ("Glistening Light");

24  297 Gingerbread Street ("Gingerbread"); 6255 W. Arby Avenue # 370 ("Arby"); and 5958 Banbury

25  Heights ("Banbury"). Ms. Ahn is and always was the rightful owner of ALS.

26       2.    On June 6, 2023—the same day that the Title Company wired $237,691.20 in sale

27  proceeds from Banbury into ALS's bank account—Park took $199,469.00 from ALS's bank account

28  and another $245,000 from Sunny's company as a downpayment to purchase 1392 Via Merano,

Henderson, Nevada 89052 ("Via Merano") in his own name. Park took out a $747,000 loan to finance the rest of the purchase price of Via Merano ("Via Merano loan"). Next, posing as ALS's managing member, Park took out a $550,000 loan secured by Glistening Light, which ALS previously owned free and clear ("Glistening Light loan"), and used $461,805.56 of ALS's equity as downpayment to purchase 33 Stonemark Drive, Henderson, Nevada 89052 ("Stonemark") in his own name. Park took out a $820,000 loan to finance the rest of the purchase price of 33 Stonemark ("Stonemark loan").

3.  All three loans—*i.e.*, the Via Merano loan, the Glistening Light loan, and the Stonemark loan—were made by the Swindle Trust and all three were secured by deeds of trust against these properties.

4.  The $747,500 Via Merano loan accrued interest at a rate of 10% per annum, to be paid monthly in payments of $6,229.17 per month starting on August 1, 2023. The maturity date was July 1, 2024, at which time the entire loan principal and all accrued interest and other outstanding amounts became due. If Park was more than five days late, a 20% late charge over the amount would become immediately due. Moreover, if Park failed to make a payment of interest or principal, or another Event of Default occurred, the entire unpaid principal balance would thereafter earn interest at the rate of 24.990% from the date of such default until cured.

5.  The $820,000 Stonemark loan accrued interest at a rate of 10% per annum, to be paid monthly in payments of $6,833.33 per month starting on September 1, 2023. The maturity date was August 1, 2024, at which time the entire loan principal and all accrued interest and other outstanding amounts became due. If Park was more than five days late, a 20% late charge over the amount would become immediately due. If Park failed to make a payment of interest or principal, or another Event of Default occurred, the entire unpaid principal balance would thereafter earn interest at the rate of 24.990% from the date of such default until cured. *Id.* at 3.

6.  The Court finds that these are non-standard loans. In his residential loan applications, Park represented that he made $10,000 in gross income from Golden Global USA, Inc. ("Golden Global") as sole business/self-employment. He listed no other income or previous employment, or money held in bank accounts, retirement accounts or other accounts. He listed $325,245.02 in

Page 3 of 8

unidentified credits. Although by May 20, 2023, Park had already taken out a $300,000 loan for Gingerbread, a $200,000 loan for Arby, and was about to take out a $270,000 loan on Banbury, he checked the "not applicable" boxes when asked to identify mortgages on these three properties.

7.      The Swindle Trust appears to have done little to no due diligence into Park's ability to pay these loans.

8.      It is undisputed that Park never made any payments on the Via Merano and Stonemark loans, (or on the Glistening Light loan for that matter) and that the loans went into default almost immediately in the summer of 2023. Nevertheless, the Swindle Trust did not file notices of breach or attempt to foreclose until more than a year later, letting the late fees and default interest accrue.

9.      Sandra Swindle, through her separate company LSLS, LLC, loaned Park $360,000 in October 2023, for his purchase of 9858 Sunriver Meadows Avenue, Las Vegas NV 89148 ("Sunriver Meadows"). When she made the loan, Park told her he could not make payments because he was entrenched in litigation.

10.     On May 6, 2024, the Ahn Defendants recorded lis pendens against Via Merano, Stonemark, Sunriver Meadows, and other properties in Park's name. Park did not object to the lis pendens.

11.     The Swindle Trust did not notice foreclosure sales for Via Merano or Stonemark until April 2, 2025. By that time, the Via Merano loan had accrued more than $500,000 in interest and late charges, and the Stonemark loan had accrued more than $400,000 in interest, and late charges.

12.     Park filed bankruptcy shortly after the Swindle Trust filed its foreclosure notices.

## II.    LEGAL FINDINGS

### A.    The Motion to Expunge was procedurally improper.

1.      To intervene, a party may file a motion, which "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." NRCP 24(c). Under NRS 12.130, an intervenor only becomes a party to an action when their intervention is properly made under the Nevada Rules of Civil Procedure, which require that a complaint be filed.

2.      Here, the Swindle Trust negotiated a stipulation with the Ahn Defendants, which allowed the Swindle Trust to intervene without the need to file a motion, but provided that "upon entry of an Order by this Court approving this Stipulation, Lender [i.e., the Swindle Trust] *will file a Complaint in Intervention* to seek relief from this Court regarding the validity of the Lis Pendens recorded against the Properties by Defendants."  May 21, 2025, Stipulation and Order, on file (emphasis added).  Despite this agreement, the Swindle Trust did not file a complaint upon entry of the Stipulation and Order or before filing its Motion to Expunge. The Court is not persuaded by the Swindle Trust's argument that no complaint was necessary or that the Trust complied, because it did not file a complaint in intervention until June 11, 2025, the day it filed its reply, which supports denying the Motion.

**B.      The Ahn Defendants met all factors of NRS 14.015(2) and NRS 14.015(3)**

3.      A party filing a lis pendens must meet four elements:

(a)      The action is for the foreclosure of a mortgage upon the real property described in the notice or affects the title or possession of the real property described in the notice;

(b)      The action was not brought in bad faith or for an improper motive;

(c)      The party who recorded the notice will be able to perform any conditions precedent to the relief sought in the action insofar as it affects the title or possession of the real property; and

(d)      The party who recorded the notice would be injured by any transfer of an interest in the property before the action is concluded.

NRS 14.015(2).

4.      In addition, the recording party must either show that:  (1) it is "is likely to prevail in the action"; or (2) "has a fair chance of success on the merits in the action and the injury described in paragraph (d) of subsection 2 would be sufficiently serious that the hardship on him or her in the event of a transfer would be greater than the hardship on the defendant resulting from the notice of pendency." NRS 14.015(3).

5.      The Nevada Supreme Court has held that a lis pendens may appropriately be filed in any action "affecting title or possession to real property," which includes claims for fraudulent conveyance or constructive trust. *Tahican, LLC v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 139

Nev. 11, 14, 523 P.3d 550, 553 (2023) ("*Tahican*").  A fraudulent transfer occurs whenever assets are intentionally transferred to hinder a creditor.  *See* NRS 112.180.

6.      This action affects title to and possession of Via Merano and Stonemark, because the Ahn Defendants allege and have demonstrated that Park fraudulently took and transferred ALS and Ahn Family's real properties, moneys, and equity in ALS properties for large down payments on Via Merano and Stonemark.  Park acquired Via Merano with ALS's sale proceeds from Banbury and sale proceeds from Sunny's restaurant (totaling $444,469) and Park acquired Stonemark by taking out a $550,000 mortgage on Glistening Light, which ALS owned free and clear, and by using $461,805 from those proceeds as downpayment.  Thus, Park fraudulently transferred **$906,274** in ALS funds and property equity into these real estate purchases.   The Ahn Family Defendants meet NRS 14.015(2)(a), because their claims "affect title or possession to real property," warranting the lis pendens under *Tahican*.

7.      ALS and the Ahn Defendants also met the requirement of NRS 14.015(2)(b) because their action was brought in good faith and without an improper motive.  The Court earlier held an evidentiary hearing and found that Park had engaged in fraud, forgery and manipulation to work himself into the Ahn family's affairs.  ALS and the Ahn Defendants have lost most of their Properties in Clark County and their equity, including more than $906,000 to Via Merano and Stonemark, due to Park's fraud.  The Swindle Trust did not dispute these facts or dispute that this factor was met in their briefing.

8.      The Ahn Defendants also met the requirement of NRS 14.015(2)(c), because there were no applicable conditions precedent to perform.  ALS and the Ahn Family's right to the return of the money that was fraudulently taken from them and used to buy Via Merano and Stonemark was triggered the moment Park stole those funds from them.  Again, the Court has already found that Park committed fraud.

9.      Finally, ALS and the Ahn Defendants are likely to prevail on their claims and their hardship would exceed that of the Swindle Trust.  If the lis pendens are lifted, the Ahn Family Defendants' equitable rights and lien would evaporate.  The Swindle Trust seeks $1,274,864.39 for Stonemark ($433,537.25 of which consists of interest and late fees) and $1,304,854.51 for Via

1    Merano ($533,400.10 of which consists of interest, and a balloon maturity late charge, and other late

2    fees). The Swindle Trust and the Bankruptcy Trustee already acknowledged that there is no equity

3    left in Via Merano and Stonemark if the Swindle Trust's interest and late fees are applied. Selling

4    the properties free and clear will not benefit the Ahn Defendants because there will be no surplus

5    proceeds left for division among Park's many creditors. Filing a nondischargability complaint does

6    not benefit the Ahn Defendants either because nothing suggests Park has any ability to pay.

7         10.    The Court has jurisdiction to deny the Motion to Expunge. The bankruptcy stay

8    termination order allowed the Swindle Trust to enforce its state law rights and remedies and seek

9    relief in this Court to expunge the lis pendens but did not require this Court to grant the Motion.

10        **C.    Unclean hands and Laches**

11        11.    The Court noted on the record that the Swindle Trust may have unclean hands. First,

12    the Via Merano and Stonemark loans were non-standard loans and the Swindle Trust appears to have

13    conducted little to no due diligence. The Court has doubts whether the Swindle Trust is a bona fide

14    lender of Via Merano and Stonemark and the equities in this case weigh against them. Second, the

15    Swindle Trust sat on its rights for an extended period of time, as they fully admit that Park did not

16    make payments, allowing hundreds of thousands of dollars in interest and late fees to accrue. Third,

17    Sandra Swindle, through her company LSLS, LLC, continued to loan Park money when Park was

18    already in default of the three prior Swindle loans for months. There is apparently no equity left in

19    Via Merano and Stonemark largely in part because of the Swindle Trust's actions and granting the

20    Swindle Trust's Motion would result in an unjust windfall.

21        12.    The Court does not enjoin the Swindle Trust from foreclosing on Via Merano and

22    Stonemark.

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

ACTIVE 712877234v1

13.     The Court's ruling is without prejudice to all claims at issue here.

WHEREFORE IT IS HEREBY ORDERED that the Swindle Trust's Motion to Expunge Lis Pendens is DENIED.

**IT IS SO ORDERED.**

Dated this 14th day of July, 2025

*Joe Hardy*

_____

**4EF 46C AB8F 2646**
**Joe Hardy**
**District Court Judge**

Respectfully submitted:
**GREENBERG TRAURIG, LLP**

*/s/ Akke Levin*
_____
KARA HENDRICKS  (NBN 07743)
AKKE LEVIN  (NBN 09102)
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada  89135
*Counsel for Defendants/ Counterclaimants/*
*Third-Party Plaintiffs, Lee Soo Ahn, Bok*
*Hyun Eum, and Chelsea Eom*

Agreed as to Form and Content:
**WOMBLE BOND DICKINSON (US)**
**LLP**

*/s/ Christine R. Fox*
_____
OGONNA BROWN  (NBN 07589)
CHRISTINE R. FOX  (NBN 15568)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169
*Attorneys for Intervenor The Swindle*
*Family Trust dated October 20, 1999*

ACTIVE 712877234v1

**Exhibit 2 –**

**Email from Z. Stemmons to Debtor (direct service of eviction pleadings).**

**From:** **Stemmons, Zaydee** Zaydee.Stemmons@wbd-us.com  📎
**Subject:** Filings in Justice Court Case No. 25CH004165
**Date:** August 8, 2025 at 4:51 PM
**To:** dukepark@me.com
**Cc:** mknepper@nvbankruptcyattorneys.com, Brown, Ogonna Ogonna.Brown@wbd-us.com, Team OMB TeamOMB@wbd-us.com, Garbutt, Kimara Kimara.Garbutt@wbd-us.com

Hello,

I hope this email finds you well. Please see attached the recently filed documents in Case No. 25CH004165 in the Henderson Justice Court. The hearing regarding why the Court should not issue a Temporary Writ of Restitution is scheduled for September 2, 2025 at 10:30 am in Department No.1.

Thank you and have a great weekend.

**Zaydee Stemmons**
Associate
Womble Bond Dickinson (US) LLP

**d:** 702-474-2645
**e:** Zaydee.Stemmons@wbd-us.com

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169



womblebonddickinson.com

  

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

**2025.07.30 Summons.pdf**

**2025.07.30 Complaint.pdf**
1.7 MB

**2025.07.30 Ex Parte Application with Exhibits.pdf**

**2025.08.05 Order to Show Cause Why A Temporary Writ of...**

**From:** **Matthew Knepper** mknepper@nvbankruptcyattorneys.com
**Subject:** Re: Filings in Justice Court Case No. 25CH004165
**Date:** August 8, 2025 at 4:53 PM
**To:** Stemmons, Zaydee Zaydee.Stemmons@wbd-us.com
**Cc:** dukepark@me.com, Brown, Ogonna Ogonna.Brown@wbd-us.com, Team OMB TeamOMB@wbd-us.com, Garbutt, Kimara
Kimara.Garbutt@wbd-us.com

Zaydee:

Thanks for this. We have not, nor will we be retained to represent Mr. Park in this action. I will, however, forward these to him as a
courtesy, via email. This does not constitute our acceptance of service on his behalf.

On Fri, Aug 8, 2025 at 4:51 PM Stemmons, Zaydee <Zaydee.Stemmons@wbd-us.com> wrote:

Hello,

I hope this email finds you well. Please see attached the recently filed documents in Case
No. 25CH004165 in the Henderson Justice Court. The hearing regarding why the Court
should not issue a Temporary Writ of Restitution is scheduled for September 2, 2025 at
10:30 am in Department No.1.

Thank you and have a great weekend.

**Zaydee Stemmons**
Associate
Womble Bond Dickinson (US) LLP

**d:** 702-474-2645                    3993 Howard Hughes Parkway
**e:** Zaydee.Stemmons@wbd-us.com      Suite 600
                                       Las Vegas, NV 89169



womblebonddickinson.com

  

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of
Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing
services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity
and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity.
Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-
notice for further details.

**From:** **Matthew Knepper** mknepper@nvbankruptcyattorneys.com 📎
**Subject:** Fwd: Opposition to Reopen Case in Case No. 25RH000015
**Date:** August 18, 2025 at 5:15 PM
**To:** DUKE PARK dukepark@me.com

Duke:

I wanted to make sure you have this.

--------- Forwarded message ---------
From: **Stemmons, Zaydee** <Zaydee.Stemmons@wbd-us.com>
Date: Mon, Aug 18, 2025 at 5:04 PM
Subject: Opposition to Reopen Case in Case No. 25RH000015
To: dukepark@me.com <dukepark@me.com>
Cc: Matthew Knepper <mknepper@nvbankruptcyattorneys.com>, Team OMB <TeamOMB@wbd-us.com>, Brown, Ogonna
<Ogonna.Brown@wbd-us.com>

Hello,

See attached for the opposition filed by Swindle Family Trust against the Motion to Reopen
filed by Duke Park in Case No. 25RH000015 (Swindle Trust v. Steve Park). Matt, I realize
that you are not counsel for this matter, but the motion to reopen did concern bankruptcy
matters and we wanted to do our best to make sure Duke received the opposition. Thank
you.

Sincerely,

Zaydee

**Zaydee Stemmons**
Associate
Womble Bond Dickinson (US) LLP

**d:** 702-474-2645                                    3993 Howard Hughes Parkway
**e:** Zaydee.Stemmons@wbd-us.com                      Suite 600
                                                       Las Vegas, NV 89169



**womblebonddickinson.com**

  

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of
Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services
in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not
responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond
Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further
details.



**25RH000015 OPP.pdf**
468 KB

**From:** **Stemmons, Zaydee** Zaydee.Stemmons@wbd-us.com  🖉
**Subject:** RE: Opposition to Reopen Case in Case No. 25RH000015
**Date:** August 18, 2025 at 5:17 PM
**To:** Matthew Knepper mknepper@nvbankruptcyattorneys.com
**Cc:** dukepark@me.com, Team OMB TeamOMB@wbd-us.com, Brown, Ogonna Ogonna.Brown@wbd-us.com

Thank you!

**From:** Matthew Knepper <mknepper@nvbankruptcyattorneys.com>
**Sent:** Monday, August 18, 2025 5:15 PM
**To:** Stemmons, Zaydee <Zaydee.Stemmons@wbd-us.com>
**Cc:** dukepark@me.com; Team OMB <TeamOMB@wbd-us.com>; Brown, Ogonna <Ogonna.Brown@wbd-us.com>
**Subject:** Re: Opposition to Reopen Case in Case No. 25RH000015

No problem.  I'll forward to him.

On Mon, Aug 18, 2025 at 5:04 PM Stemmons, Zaydee <Zaydee.Stemmons@wbd-us.com> wrote:

Hello,

See attached for the opposition filed by Swindle Family Trust against the Motion to Reopen filed by Duke Park in Case No. 25RH000015 (Swindle Trust v. Steve Park). Matt, I realize that you are not counsel for this matter, but the motion to reopen did concern bankruptcy matters and we wanted to do our best to make sure Duke received the opposition. Thank you.

Sincerely,
Zaydee

**Zaydee Stemmons**
Associate
Womble Bond Dickinson (US) LLP

**d:** 702-474-2645
**e:** Zaydee.Stemmons@wbd-us.com

3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169



**womblebonddickinson.com**

  

This email is sent for and on behalf of Womble Bond Dickinson (US) LLP. Womble Bond Dickinson (US) LLP is a member of Womble Bond Dickinson (International) Limited, which consists of independent and autonomous law firms providing services in the US, the UK, and elsewhere around the world. Each Womble Bond Dickinson entity is a separate legal entity and is not responsible for the acts or omissions of, nor can bind or obligate, another Womble Bond Dickinson entity. Womble Bond Dickinson (International) Limited does not practice law. Please see www.womblebonddickinson.com/us/legal-notice for further details.

Exhibit 3 –

# Certificate of Service (Doc. 63) evidencing direct service of Summons/OSC on Debtor's residence.

Duke Park, Debtor – Pro Se

1392 Via Merano St.

Henderson, NV 89052

408-318-3700

dukepark@me.com

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re:

DUKE PARK,

Debtor.

Case No.: 25-12285-abl

Chapter 7

**SUPPLEMENTAL EVIDENCE IN SUPPORT OF MOTION TO ENFORCE DISCHARGE
INJUNCTION (DOC. 45)**

**(Property Address: 1392 Via Merano St., Henderson, NV 89052)**

---

## I. INTRODUCTION

Debtor, Duke Park, respectfully submits this Supplemental Evidence in further support of his
pending **Motion to Enforce Discharge Injunction (Doc. 45)** concerning the property located at
**1392 Via Merano St., Henderson, Nevada.**

On **July 22, 2025,** this Court entered the **Order of Discharge** (Doc. 42). On **July 24, 2025,** the
Bankruptcy Noticing Center ("BNC") served the **Certificate of Notice** to all listed creditors and
parties in interest, expressly prohibiting any further collection actions or contact with the Debtor.

Nevertheless, on **August 16, 2025 (Saturday),** a process server unlawfully attempted service at
the Debtor's residence in Henderson. This act was undertaken despite the discharge order and
BNC notice and constitutes a direct violation of the discharge injunction pursuant to **11 U.S.C. §
524(a)(2).**

---

## II. EXHIBITS

The following exhibits are attached hereto and incorporated by reference:

- **Exhibit A – BNC Certificate of Notice**
  (Creditor list including Swindle Trust and its counsel, Oganna Brown. Notice of discharge prohibition.)
- **Exhibit B – Order of Discharge (Doc 42)**
  (Entered July 22, 2025. Prohibits any collection act against the Debtor.)
- **Exhibit C – Process Server Document (Received 08/16/2025)**
  (Copy of court papers delivered unlawfully to Debtor's residence.)
- **Exhibit D – Timestamped Photo (Taken 08/16/2025)**
  (Mobile phone screenshot showing actual service occurred on Saturday.)

---

## III. CONCLUSION

This supplemental filing establishes that creditors and/or their agents, notwithstanding the clear directives of this Court, engaged in an improper service attempt against the Debtor on August 16, 2025.

Debtor respectfully requests that this Court take notice of this violation and consider this supplemental evidence in connection with the pending **Motion to Enforce Discharge Injunction (Doc. 45),** currently scheduled for hearing on **September 15, 2025, at 9:30 AM.**

DATED: August 18, 2025

Respectfully submitted,

Duke Park, Debtor – Pro Se

1392 Via Merano St.
Henderson, NV 89052
408-318-3700
dukepark@me.com

**EXHIBIT A**

BNC Certificate of Notice

(Creditor list including Swindle Trust and counsel Oganna Brown)

United States Bankruptcy Court

District of Nevada

In re:

DUKE PARK

Debtor

Case No. 25-12285-abl

Chapter 7

# CERTIFICATE OF NOTICE

District/off: 0978-2

Date Rcvd: Jul 22, 2025

User: admin

Form ID: 318

Page 1 of 3

Total Noticed: 19

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jul 24, 2025:

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | DUKE PARK, 1392 VIA MERANO ST, HENDERSON, NV 89052-4094 |
| aty | + | AKKE LEVIN, GREENBERG TRAURIG, LLP, 10845 GRIFFITH PEAK DRIVE, STE 600, LAS VEGAS, NV 89135-1557 |
| aty | + | BENJAMIN B. CHILDS, SR., 318 S. MARYLAND PARKWAY, LAS VEGAS, NV 89101-5321 |
| aty | + | KARA B. HENDRICKS, GREENBERG TRAURIG, LLP, 10845 GRIFFITH PEACH DR, STE 600, LAS VEGAS, NV 89135-1557 |
| aty | + | KAREN M. AYARBE, LEACH KERN GRUCHOW ANDERSON SONG, 5421 KIETZKE LANE, STE. 200, RENO, NV 89511-1025 |
| aty | + | MATTHEW I KNEPPER, NEVADA BANKRUPTCY ATTORNEYS, 5940 S. RAINBOW BLVD, STE 400, PMB 99721, LAS VEGAS, NV 89118-2507 |
| aty | + | OGONNA M. BROWN, WOMBLE BOND DICKINSON (US) LLP, 3993 HOWARD HUGHES PARKWAY, SUITE 600, LAS VEGAS, NV 89169-5996 |
| cr | + | BENJAMIN B. CHILDS, LTD, 318 South Maryland Parkway, Las Vegas, Ne 89101-5321 |
| cr | + | BOK HYUN EUM, GREENBERG TRAURIG, LLP, C/O KARA B. HANDRICKS, ESQ., C/O AKKE LEVIN, ESQ., 10845 GRIFFITH PEAK DRIVE, SUITE 600 LAS VEGAS, NV 89135-1557 |
| cr | + | LEE SOO AHN, GREENBERG TRAURIG, LLP, C/O KARA B. HANDRICKS, ESQ., C/O AKKE LEVIN, ESQ., 10845 GRIFFITH PEAK DRIVE, SUITE 600, LAS VEGAS, NV 89135-1557 |
| cr | + | Villagio Property Owners Association, 3077 E. Warm Springs Rd., Las Vegas, NV 89120-3751 |
| 12656248 | + | ALS Property Holdings, LLC, c/o Greenberg Traurig, LLP, 10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135-1557 |
| 12592429 | + | BENJAMIN B. CHILDS, LTD., 318 South Maryland Parkway, Las Vegas, Nevada 89101-5321 |
| 12656302 | + | EBH Management Co., LLC, c/o Greenberg Traurig, LLP, 10845 Griffith Peak Drive, Suite 600, Las Vegas, Nevada 89135-1557 |
| 12658865 | | Kum Park, 6850 Spring Mountain Rd U-11, Las Vegas, NV 89146-8825 |
| 12648420 | + | Zions Bancorporation, NA dba Nevada State Bank, Legal Services UT ZB11 0877, PO Box 30709, Salt Lake City, UT 84130-0709 |

TOTAL: 16

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| tr | + | Email/Text: robert.atkinson@txitrustee.com | Jul 23 2025 00:31:00 | ROBERT E. ATKINSON, 376 E WARM SPRINGS RD STE 130, LAS VEGAS, NV 89119-4262 |
| ust | + | Email/Text: USTPRegion17.LV.ECF@usdoj.gov | Jul 23 2025 00:32:00 | U.S. TRUSTEE - LV - 7, 300 LAS VEGAS BOULEVARD, SO., SUITE 4300, LAS VEGAS, NV 89101-5803 |
| 12607988 | + | Email/Text: Trbank@clarkcountynv.gov | Jul 23 2025 00:32:00 | Clark County Treasurer, 500 S Grand Central Pkwy, Box 551220, Las Vegas, NV 89155-4502 |

TOTAL: 3

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| intp | | Bok Hyun Eum |
| intp | | Lee Soo Ahn |
| cr | | The Swindle Family Trust dated October 20, 1999 |

TOTAL: 3 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

**EXHIBIT B**

Order of Discharge (Doc. 42)

| Information to identify the case: | | |
|---|---|---|
| Debtor 1 | **DUKE PARK** | Social Security number or ITIN    xxx–xx–3694 |
| | First Name    Middle Name    Last Name | EIN    __–_____ |
| Debtor 2 (Spouse, if filing) | First Name    Middle Name    Last Name | Social Security number or ITIN    ____ |
| | | EIN    __–_____ |
| United States Bankruptcy Court | District of Nevada | |
| Case number: | 25–12285–abl | |

## Order of Discharge
12/15

**IT IS ORDERED:** A discharge under 11 U.S.C. § 727 is granted to:

DUKE PARK

7/22/25

**By the court:** AUGUST B. LANDIS
United States Bankruptcy Judge

---

### Explanation of Bankruptcy Discharge in a Chapter 7 Case

This order does not close or dismiss the case, and it does not determine how much money, if any, the trustee will pay creditors.

**Creditors cannot collect discharged debts**

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily or from paying reaffirmed debts according to the reaffirmation agreement. 11 U.S.C. § 524(c), (f).

**Most debts are discharged**

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts owed before the debtors' bankruptcy case was filed.

Also, if this case began under a different chapter of the Bankruptcy Code and was later converted to chapter 7, debts owed before the conversion are discharged.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

**For more information, see page 2 >**

Official Form 318     Order of Discharge     page 1

**EXHIBIT C**

Process Server Document (Received August 16, 2025)



Return To Office By
**Aug 18, 2025**

**Legal Process Service**
Bradford Cameron Nielsen

Assigned: **August 11, 2025**
Appearance Date: 09/02/2025

WorkOrderNo. 2504548

Service: Routine          Last Day To Serve:

Docs To Be Served: Summons - Unlawful Detainer; Complaint for Unlawful Detainer

Ex Parte Application for Order to Show Cause Why a Temporary Writ of Restitution Should Not Issue, and Order Shortening
Order to Show Cause Why a Temporary Writ of Restitution Should Not Issue, and Order Shortening Time to Answer

Serve To Duke Park, and all other occupants

Where # 1. 1392 Via Merano St., Henderson, NV 89052

Residence      Gated?     Yes
              Community   Villaglo
              Name
              Gate       #6127
              Code

FOR SERVICE TO BE VALID THESE DOCUMENTS MUST BE SERVED AS INDICATED:

#8905

...al Service @ POE          Abode service to co-resident, minimum age 14

...Unlawful Possession of Property
...iding there who is 14 yrs., or older

...s Dickinson (US) LLP     ID#: A577     Ogonna M. Brown          Date Rec'd: 08/11/2025
                           Attnys Ph#:  (702) 474-2666
Time Served _____ am     ATTN (at Attny's Office):  Kimara Garbutt
             _____ pm    Approx. Description: Sex ____ / ____ Age ____ Skin ____
                           Height / Weight ____ / ____          Hair ____
                           Other ____
                           Individual [ ]   Corp. [ ]   Gov't Agency [ ]   Suitable Age Person [ ]   Mobile Home

**EXHIBIT D**

Timestamped Photo (Taken August 16, 2025)

